**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MOHAMED A. HAFEZ,**

                                 **Plaintiff,**

     **vs.**                                 **1:10-cv-541**
                                              **(MAD/DRH)**

**CITY OF SCHENECTADY, BRIAN U.**
**STRATTON, KEITH LAMP, DOMENIC**
**VISCARIELLO and ELISA WICKHAM,**

                                   **Defendants.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**MOHAMED A. HAFEZ**
1151 Crane Street
Schenectady, New York 12303
Plaintiff *pro se*

**CARTER, CONBOY, CASE, BLACKMORE,**      **MICHAEL J. MURPHY, ESQ.**
**MALONEY & LAIRD, P.C.**
20 Corporate Woods Boulevard
Albany, New York 12211
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On May 10, 2010, Plaintiff *pro se* commenced this action by the filing of a Summons and Complaint, in which he alleged claims of retaliation in violation of his First Amendment rights, unlawful search and seizure in violation of his Fourth Amendment rights, selective enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment, and a state-law cause of action for intentional infliction of emotional distress. *See* Dkt. No. 1 at ¶¶ 48-51, 54-57.

Plaintiff also alleged that Section 210 of the Code of Ordinances of the City of Schenectady (the "Code") is unconstitutional and that Defendant Schenectady's requirement that a landlord obtain a rental certificate for each apartment rented has been unfairly enforced against him for a variety of reasons, including in retaliation for his prior tax grievances and because of his "newcomer" status in Schenectady. *See id.* at ¶¶ 52-53.

On June 27, 2011, Plaintiff moved for a temporary restraining order and a preliminary injunction "enjoining the defendants and the City of Schenectady's code enforcement officers during the pendency of his action from retaliating against, or harassing, me or enforcing the Schenectady Rental Certificate Ordinance against me, my properties or my business during the pendency of this case, because the Ordinance is unconstitutionally vague and I am being irreparably harmed from the arbitrary and discriminatory enforcement of the Ordinance which inhibits the exercise of my First Amendment constitutional rights." *See* Dkt. No. 38-1 at 1. On June 28, 2011, the Court denied Plaintiff's motion for a temporary restraining order but ordered Defendants to show cause "why a preliminary injunction should not be entered enjoining defendants during the pendency of his action from enforcing Section 210 of the Code of Ordinances, City of Schenectady, against plaintiff, and any further relief that the Court may deem proper[.]" *See* Dkt. No. 39. On August 30, 2011, the Court denied Plaintiff's motion for a preliminary injunction, finding that Plaintiff failed to establish both a likelihood of success on the merits and that he will suffer irreparable harm if the Court declined to issue a preliminary injunction. *See* Dkt. No. 46.

Currently before the Court is Defendants' motion for summary judgment.

## II. BACKGROUND

**A.      Relevant statutory provisions**

On October 9, 2007, the Council of the City of Schenectady enacted Section 210 of the Code of Ordinances of the City of Schenectady.  *See* Dkt. No. 42-8.  The Council provided that

> [t]he purpose of this chapter is to establish a procedure and standards for the identification and registration of rental properties, to ensure that the City has a meaningful, efficient and effective means of communicating with those persons and companies who own rental properties, to provide for the inspection of certain residential rental property when there is a change in occupancy, and to fix the responsibilities on owners to ensure that residential rental property is maintained in accordance with the standards set forth in this chapter and the building and property maintenance codes promulgated by the New York State Department of State.  This chapter is adopted to promote the health and safety of tenants and to alleviate conditions of substandard housing, including slums and blight.

*See id.* at § 210-1.

In pursuit of these goals, the Code requires that each owner obtain a "valid rental certificate or temporary rental certificate" prior to permitting an apartment to be occupied (the "rental certificate ordinance" or "ordinace").  *See id.* at § 210-6 – 210-8.[1]  Specifically, the Code provides that, "[w]henever a vacancy shall exist in a rental unit and a leasing is about to occur, or whenever there is a change in occupancy, the owner shall submit a written application for a rental certificate.  This application shall indicate the name and address of the owner, the location of the property and the identity of the rental unit by number or other suitable means."  *See id.* at § 210-

---

[1] The rental certificate requirement applies only to buildings with two or more rental units, unless those rental units are inspected and leased under contract to the Schenectady Municipal Housing Authority and the United States Department of Housing and Urban Development.  *See* Dkt. No. 42-8 at § 210-8(A)(1).

8(A)(2).[2]  Thereafter, within five (5) days of receipt of the rental certificate application, Defendant Schenectady's building inspector shall inspect the rental unit to determine if it is in compliance with specified portions of the Code that relate to safety and health concerns for the tenants.  *See id.* at § 210-8(A)(3).[3]

To enforce the above sections, "[d]uring regular business hours or in an emergency, the Building Inspector or his representative or any duly authorized City representative, upon the showing of proper credentials and in the discharge of his duties, may enter any building or rental unit within a building."  *See id.* at § 210-9(A).  Moreover, "[a]t the request of the Building Inspector, the Corporation Counsel is authorized to make application to the City Court of the City of Schenectady or any other court of competent jurisdiction for the issuance of a search warrant to be executed by a police officer in order to conduct an inspection of any premises believed to be subject to this chapter."  *See id.* at § 210-9(B).  Further, "[t]he Building Inspector may seek a search warrant whenever the owner, managing agent or occupant fails to allow inspections of any dwelling unit contained in the rental property where there is a reasonable cause to believe that there is a violation of this chapter, or a violation of the New York Uniformed Building Code Act or of any code of the City of Schenectady or any applicable fire code."  *See id.*  The fee for the inspection and issuance of a rental certificate is $50 and $25 for each subsequent reinspection, but "[t]he fee for the issuance of a rental certificate whenever an owner fails to submit an application

---

[2] A rental certificate is valid until, among other things, it is revoked by the Building Inspector or until there is a change in the occupancy of the apartment.  *See* Dkt. No. 42-8 at § 210-10.

[3] Without setting forth the entire Code, the standards include, but are not limited to, lighting, ventilation, access, heating, electrical, and fire protection.  *See* Dkt. No. 42-8 at § 210-8(A).

for a rental certificate as required by this chapter prior to renting a unit is $100." *See id.* at § 210-14(A), (B).

If a landlord violates the provisions at issue in the present matter, he may be subject to a fine and may potentially face misdemeanor prosecution. *See id.* at § 210-18(B). Specifically, the provision provides as follows:

> (1) A violation of Article III of this chapter shall be an offense and shall be punishable by a fine of not less than $150 and not exceeding $250, or by a civil penalty of not less than $250. A separate offense shall be deemed committed on each day on which a violation occurs or continues.

> (2) A second, independent violation of Article III during an eighteen-month period, and any willfully, intentional and knowingly made violation of Article III, shall be a Class A misdemeanor and shall be punishable by a fine of not less than $500 and not exceeding $1,000 and a period of incarceration of not less than ten (15)[4] days, nor exceeding one year. A separate offense shall be deemed committed on each day on which a violation occurs or continues.

*See id.*

**B.     Underlying conduct**

In 2003, Plaintiff moved to the City of Schenectady. *See* Dkt. No. 52-3 at ¶ 1; Dkt. No. 61 at ¶ 1. Plaintiff, individually and as the sole shareholder of Crane Properties, Inc., owns several rental properties in Schenectady. *See* Dkt. No. 61 at ¶ 2. As of October 1, 2009, Plaintiff and/or Crane Properties, Inc. owned properties at 26 Selden Street, 1151 Crane Street, 727 Crane Street,

---

[4] It is unclear whether Defendant Schenectady intended for the punishment not to exceed ten (10) or fifteen (15) days when found guilty of such a misdemeanor. Both versions of the Code contain this same typographical error. *See* Dkt. No. 38-1 at § 210-18(B); Dkt. No. 42-8 at § 210-18(B). This error, however, has no bearing on the disposition of the motion presently before the Court.

1671 Broadway, 1594 Union Street, 1521 Van Vranken Avenue, and 1221 Albany Street.  *See id.* at ¶ 3.

In June of 2009, a number of Plaintiff's properties were re-assessed by the City Assessor's office.  *See id.* at ¶ 4.  Plaintiff successfully grieved the tax re-assessment of 727 Crane Street, but unsuccessfully grieved 1521 Van Vranken Street and 1151 Crane Street.  *See id.* at ¶ 5.

On October 1, 2009, Defendant Viscariello, a Code Enforcement Officer, received a complaint that a new business opened at 727 Crane Street.  *See* Dkt. No. 52-3 at ¶ 6; Dkt. No. 61 at ¶ 6.[5]  Upon receiving notice of the complaint, Plaintiff asked Defendant Wickham to accompany him to the 727 Crane Street property.  *See* Dkt. No. 61 at ¶ 7.  Upon arriving at the property, Defendants Wickham and Viscariello were allowed to enter the building.  *See* Dkt. No. 52-24 at 44-46; Dkt. No. 52-25 at 8-9.  Inside the building, on the first floor, Defendant Viscariello observed coolers, wires hanging from the ceiling, coiled wire on the floor, unattached plumbing fixtures, and open sewer line traps.  *See* Dkt. No. 61 at ¶ 9.  Shortly after Defendants Wickham and Viscariello arrived, Plaintiff arrived at the building and, after a brief discussion, Plaintiff asked them to leave his property.  *See id.* at ¶ 10.

Thereafter, Plaintiff was issued two appearance tickets and notices of prosecution for a rental inspection violation, unsafe conditions, and a stop-work order for his 727 Crane Street property.  *See id.* at ¶ 11.  On November 6, 2009, Plaintiff was issued an "Information for Violation" regarding the stop-work order and the unsafe conditions appearance tickets.  *See id.* at ¶ 12; Dkt. No. 52-11.

---

[5] Plaintiff disputes this statement, but only to state that there was no new business at his 727 Crane Street Property.  *See* Dkt. No. 61 at ¶ 6.

On November 9, 2009, Plaintiff attended a meeting with City officials for the purpose of resolving the October 1, 2009 appearance tickets. *See* Dkt. No. 61 at ¶ 13. At that time, Plaintiff agreed to install a two (2) hour fire-rated ceiling between the first and second floors of 727 Crane Street. *See id.* at ¶ 14. Further, on September 27, 2010, the charges against Plaintiff were dropped but Plaintiff plead guilty, on behalf of Crane Properties, Inc., to working without a building permit and paid the $350 fine with his personal credit card. *See id.* at ¶ 16; Dkt. No. 52-15.

On January 21, 2010, Plaintiff submitted a rental certificate application for six apartments at 1151 Crane Street. *See* Dkt. No. 61 at ¶ 17. On February 18, 2010, Code Enforcement Officer Maurci performed inspections of, and issued rental certificates for, apartments five, six, and seven at 1151 Crane Street. *See id.* at ¶ 18. That same day, Code Enforcement Officer MacDonald inspected apartments two, three, and four at 1151 Crane Street. *See id.* at ¶ 19. Rental certificates were not, however, issued for these apartments. *See id.* On February 19, 2010, Plaintiff was issued a notice of prosecution for failure to have rental certificates for apartments two, three, and four. *See id.* at ¶ 20; Dkt. No. 52-18.

On February 24, 2010, Plaintiff wrote a letter to Defendant Stratton complaining about the notice of violation. *See id.* at ¶ 21. On March 8, 2010, Plaintiff sent Defendant Stratton a follow-up letter. *See id.* at ¶ 22. Defendant Lamp sent Plaintiff a letter on March 26, 2010, which states that the rental certificates were not issued because Plaintiff prevented an inspection of the building's basement. *See id.* at ¶ 23.[6] Plaintiff did not reapply for rental certificates for the

---

[6] In his deposition, Plaintiff asserted that Mr. MacDonald never asked to inspect the basement, but then confirms that Mr. MacDonald did not complete his inspection and that, in light of his menacing and "nasty attitude," Plaintiff asked him to leave the building. *See* Dkt. No. 52-24 at 85-86, 90.

apartments inspected by Mr. MacDonald because he "saw no need . . . since [he] already paid $150 for the inspections." *See* Dkt. No. 52-24 at 90-92.

On April 27, 2010, Plaintiff was issued a citation for having a plumbing leak and a hole in the ceiling at his property on 1671 Broadway. *See* Dkt. No. 61 at ¶ 25; Dkt. No. 52-22. That same day, Plaintiff was also issued a citation for failure to have a rental certificate on file for apartment three at 1671 Broadway, which was occupied at the time of inspection. *See id.* at ¶ 26; Dkt. No 52-23.

On May 10, 2010, Plaintiff commenced this action, alleging that Defendants violated his constitutional rights. Specifically, Plaintiff claims the following violations: (1) retaliation in violation of his First Amendment rights; (2) unlawful search and seizure in violation of his Fourth Amendment rights; (3) selective enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment; and (4) that Section 210 of the Code is unconstitutionally vague. *See* Dkt. No. 1.

## III. DISCUSSION

### A.   Summary judgment standard

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a

motion for summary judgment may not simply rely on the assertions in its pleading.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.      42 U.S.C. § 1983**

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws."  *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983).  Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained.  *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)).  As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each

defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.*

(citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L.

Ed. 2d 619 (1979)) (other citation omitted).


C.      **Void for vagueness**

Plaintiff claims that "Section 210 of the Schenectady City Code is unconstitutionally

vague in light of the recent Second Circuit decision in *Cunney v. Board of Trustees*, 660 F.3d 612

(2d Cir. 2011), for it provides inadequate notice of its new terms and conditions and encourages

arbitrary and discriminatory enforcement by the Schenectady code enforcement officers." *See*

Dkt. No. 55-11 at 24.[7]  Defendants, however, contend that the law is not unconstitutionally vague

because a reasonable person would be adequately notified of Section 210's required conduct and

because Section 210 does not encourage arbitrary enforcement. *See* Dkt. No. 52-2 at 23-26.

The Fourteenth Amendment's guarantee that no state shall "deprive any person of life,

liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, entitles a person

to "be informed as to what [a law] commands or forbids." *Thibodeau v. Portuondo*, 486 F.3d 61,

65 (2d Cir. 2007) (citing *Lanzetta v. N.J.*, 306 U.S. 451, 453, 59 S. Ct. 618, 83 L. Ed. 888 (1939)).

The "void-for-vagueness" doctrine requires first that "'laws be crafted with sufficient clarity to

"give the person of ordinary intelligence a reasonable opportunity to know what is prohibited"'"

and second that laws "contain 'minimal guidelines to govern law enforcement.'" *Id.* at 65-66

(quoting *Betancourt v. Bloomberg*, 448 F.3d 547, 552 (2d Cir. 2006)) (other quotation omitted);

*see also Kolender v. Lawson*, 461 U.S. 352, 358 (1983); *Farid v. Ellen*, 593 F.3d 233, 240 (2d

---

[7] To avoid confusion, anytime the Court references a specific page number for an entry on
the docket, it will cite to the page number assigned by the Court's electronic filing system.

Cir. 2010).  A statute or rule is inadequate under the second criterion when it "fails to provide sufficiently explicit standards for those who apply it," and "impermissibly delegates basic policy matters . . . for resolution on an ad hoc and subjective basis."  *Farid*, 593 F.3d at 243.

"The Supreme Court has cautioned that this doctrine does not require 'meticulous specificity' from every statute."  *Thibodeau*, 486 F.3d at 66 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)).  "The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment."  *Vill. of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).  Courts tolerate vagueness in a civil enactment over vagueness in a criminal penalty "because the consequences of imprecision are qualitatively less severe."  *Id.* at 498-99.  However, where a "statute's literal scope, unaided by a narrowing . . . court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts."  *Smith v. Goguen*, 415 U.S. 566, 573 (1974).

"A statute may be challenged on vagueness grounds either as applied or on its face."  *Thibodeau*, 486 F.3d at 67.  Although both of these types of vagueness challenges require the inquiry described above, "the two differ in terms of what parties may assert and how these challenges may be brought."  *Id.* (citation omitted).

The Court will begin with the analysis of the "'as applied' challenge because 'the permissibility of a facial challenge sometimes depends upon whether the challenged regulation was constitutional as applied.'"  *Id.* (quotation omitted).  In fact, the Supreme Court has instructed the courts are to "'examine the complainant's conduct before analyzing other hypothetical applications of the law.'"  *Id.* (quoting *Hoffman Estates*, 455 U.S. at 495, 102 S. Ct. 1186).

In the present matter, Plaintiff argues that the Ordinance is unconstitutionally vague.  For example, Section 210-8(A)(3)(1) of the Ordinance uses the phrase "clean and sanitary," which Plaintiff claims was declared unconstitutionally vague in *Reha v. State of Minnesota*, 474 N.W.2d 360 (Minn. 1991).[8]  Further, Plaintiff claims that code enforcement officers have interpreted the Ordinance differently when applying its terms to others and that these differing applications and interpretations support a finding that the Ordinance is unconstitutionally vague.  *See Konikov v. Orange County*, 410 F.3d 1317, 1330-31 (11th Cir. 2005); *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)).[9]

In *Raab Family Partnership v. Borough of Magnolia*, Civil No. 08-5050, 2009 WL 361135 (D.N.J. Feb. 13, 2009), the plaintiff challenged, among other things, a city ordinance that required landlords to obtain a certificate of occupancy, each year, for each apartment rented.  *See id.* at *2.  The plaintiff argued that the ordinance was unconstitutionally vague because "the ordinance makes the determination as to whether a particular building conforms to the Code's provisions subject to 'the discretion of the Building Inspector or Housing Inspector[.]" *Id.* at *14.  Denying the plaintiff's challenge to the ordinance, both on its face and as applied, the court noted that,

---

[8] In light of Plaintiff's *pro se* status, the Court has considered the arguments made in support of his application for a preliminary injunction, as well as those in his memorandum of law in opposition to Defendants' motion for summary judgment.

[9] Plaintiff also, for the first time, argues that the Ordinance violates his due process rights because it fails to provide an impartial review of the Building Inspector's decisions.  *See* Dkt. No. 55-11 at 25 (citing *Simard v. Board of Education of the Town of Groton*, 473 F.2d 988, 993 (2d Cir. 1973)).  This argument, however, is meritless.  Even assuming that the Ordinance did not provide Plaintiff with an impartial administrative review of the Building Inspector's decision, such impartial review was available to him through an Article 78 proceeding, thereby satisfying due process.  *See Morris v. New York City Employees' Retirement System*, 129 F. Supp. 2d 599, 611 (S.D.N.Y. 2001) (citations omitted); *see also N.Y.S. Nat. Org. for Women v. Pataki*, 261 F.3d

[n]otwithstanding Plaintiffs' dissatisfaction with the "discretion" section 112-2 invests in "the Building Inspector or Housing Inspector," . . . the ordinance at issue herein manifestly is not standardless and is demonstrably not "impermissibly vague in all of its applications." *Hotel & Motel Ass'n*, 344 F.3d at 972 (citation omitted). To the contrary, section 112-2 states that whether or not a certificate of occupancy should issue is determined based upon whether the building in question meets the "standards established in the BOCA National Property Maintenance Code, 1993, Fourth edition." . . . The BOCA Code, a document "designed for adoption by state or local governments" for "the protection of public health, safety and welfare," . . . , consists almost exclusively of specific prescriptions for occupancy standards, ranging from "light, ventilation and occupancy limitations," to "mechanical and electrical requirements," to "fire safety requirements." . . . Plaintiffs' suggestion that the ordinance, which derives its standards from this detailed and highly specific professional code, is "impermissibly vague in all of its applications," is untenable. *Hotel & Motel Ass'n*, 344 F.3d at 972 (citation omitted).

*Id.* at *13 (internal citations omitted). Moreover, the court held that the fact that the ordinance makes the determination as to whether a particular building conforms to the code's provisions subject to the building inspector's "discretion" does not "transform these specific prescriptions into a standardless and impermissibly vague enactment vulnerable to Plaintiffs' vagueness challenge. *Id.* at *14.

As in *Raab Family Partnership*, the Court finds that the challenged provisions are "crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Thibodeau*, 486 F.3d at 65 (citations omitted). The Code sets forth fifteen different categories of standards that each rental unit must be in compliance with and provides detail regarding what each landlord must do to be in compliance. *See* Dkt. No. 38-1 at 50-52. These categories include standards for light and ventilation, access and vertical travel, exits, structural requirements, exterior protection, interior protection, plumbing, heating equipment, electrical, cooking and refrigeration equipment, fire protection, maintenance requirements,

registration of rental unit, exterior property areas, and prohibited storage.  *See id.*  Moreover, Chapter 210 of the Code, which is at issue in this case, provides that its purpose is to ensure that all "residential rental property is maintained in accordance with the standards set forth in this chapter and the building and property maintenance codes promulgated by New York State Department of State."  *See id.* at 44.  The Court fails to see how the Code is unclear in setting forth what is required of residential rental units in order to obtain a rental certificate.  Further, the standards set forth in the Code sufficiently limit the discretion afforded to the code enforcement officers.  As such, Plaintiff's claim that the Code's vagueness encourages arbitrary enforcement must fail.

Moreover, Plaintiff argues that, although he read the Ordinance at a training session provided by the City for landlords, the session was held in 2005 and involved an earlier version of the Ordinance.  *See* Dkt. No. 55-11 at 23.  This argument is meritless.  The Rental Certificate Ordinance, and other relevant provisions of the Code, in effect at the time of this informational session was codified at section 167 of the City Code, and is nearly identical to the current version of the Ordinance, setting forth the same standards to be met and procedures to be followed. *Compare* Dkt. No. 52-31 at 7-10; *with Wisoff v. Schenectady*, No. 1:07-cv-34, Dkt. No. 9-8 at 4-7. As such, Plaintiff was clearly provided with sufficient notice of what is required of him and the penalties for failure to comply with the Rental Certificate Ordinance and the other relevant provisions of the Code.[10]

---

[10] The Court notes that the law in the Second Circuit is unclear "[w]hether a facial void-for-vagueness challenge can be maintained when, as here, a challenge is *not* . . . based on the First Amendment[.]"  *Dickerson v. Napolitano*, 604 F.3d 732, 743 (2d Cir. 2010) (footnote and citations omitted).  As the Second Circuit has noted, however, there are two possible standards which may govern such a challenge.

(continued...)

Based on the foregoing, the Court finds that no reasonable jury could find that the Ordinance is unconstitutionally vague, either as applied to Plaintiff or on its face; and, therefore, the Court grants Defendants' motion for summary judgment as to this claim.

**D.      Fourth Amendment challenge**

*1. Defendants' inspection of 1151 Crane Street*

Plaintiff contends that Defendants' inspection of 1151 Crane Street, and the Ordinance requiring these inspections, violated his Fourth Amendment rights. *See* Dkt. No. 55-11. Defendants claim that the Ordinance is similar to laws previously upheld against Fourth Amendment challenges and that Plaintiff does not have standing to challenge inspections of occupied apartments. *See* Dkt. No. 52-2 at 14-17.

The Fourth Amendment protects individuals in their homes "against unreasonable searches and seizures." U.S. Const. amend. IV. "A warrantless search is 'per se unreasonable . . . subject to only a few specifically established and well-delineated exceptions.'" *United States v.*

---

[10](...continued)
"The first possible standard for evaluating facial challenges outside of the First Amendment context is that such challenges are permitted only when 'no set of circumstances exists under which the [law] would be valid.'" *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)) (other citation omitted). Under this standard, if the party's as-applied challenge to the law has failed, so too must the facial challenge. *See id.* at 743-44 (citations omitted).

The second potential standard allows for a non-first amendment facial challenge, but only when a constitutionally protected right is implicated. *See id.* at 744 (citation omitted). The Second Circuit has interpreted this standard "to permit a non-First Amendment vagueness challenge only after concluding that 'the law is "permeated" with vagueness, and, perhaps, that it infringes on a constitutional right and has no *mens rea* requirement.'" *Id.* (quotations and other citation omitted).

As the above discussion makes clear, under either standard, Plaintiff's claim fails on the merits.

*Elliott*, 50 F.3d 180, 185 (2d Cir. 1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)).  "'A warrantless inspection of a private dwelling by a municipal administrative officer without the consent of the owner is generally unreasonable absent specifically delineated circumstances. . . .  However, searches pursuant to a regulatory scheme need not adhere to the ususal requirements where special governmental needs are present.'"  *Mangino v. Incorporated Vill. of Patchogue*, 739 F. Supp. 2d 205, 238 (E.D.N.Y. 2010) (quotation and other citation omitted).

In *Sokolov v. Freeport*, 52 N.Y.2d 341 (1981), the plaintiff brought a Fourth Amendment challenge to a Village of Freeport ordinance which mandated that residential rental property within the village could not be let or re-let without first obtaining a permit from the village.  *See id.* at 343.  According to the ordinance, upon notification of vacancy by an owner, the department of buildings "must conduct an inspection of the property within two business days."  *Id.* at 344. The ordinance further provided for a fine if a landlord refused to consent to a warrantless search. *See id.*  The plaintiff was prosecuted in criminal actions and claimed that the ordinance violated his Fourth Amendment rights.  *See id.* at 345.  In finding that the ordinance violated the Fourth Amendment, the New York Court of Appeals held that the ordinance effectively authorized and required warrantless inspection of residential rental property.  *See id.* at 347 (holding that "[a]n ordinance which compels consent to a warrantless search may not be upheld except in certain carefully limited circumstances").  Moreover, noting that the standard for obtaining a search warrant for an administrative search is significantly less strict than in the criminal context, the court held that

> [w]e do not believe, however, that the requirement of a warrant for
> an administrative inspection is a hollow one.  It has been postulated
> that, among other things, the warrant requirement may prevent
> inspections based upon caprice or spite and prevent administrative

> inspections as a pretext for police investigations; and the use of a
> warrant may also lead to appropriate restrictions on the place to be
> searched. . . .  The minor and infrequent inconvenience which a
> warrant requirement may create cannot overshadow the substantial
> benefits which will result to the individual's dignity and liberty
> through the preservation of his right to privacy.  It must also be
> emphasized, however, that our holding is not to be construed as
> preventing prompt inspections in true emergency situations[.]

*Id.* at 348-49 (internal footnote and citations omitted).

On the same day that the New York Court of Appeals decided *Sokolov*, it also issued a decision in *Pashcow v. Town of Babylon*, 53 N.Y.2d 687 (1981), which dealt with a similar municipal code.  In *Pashcow*, the court held that "[i]n this action for a declaratory judgment it cannot be said that the ordinance of the Town of Babylon is unconstitutional on its face, for it does require consent or a warrant for an administrative search except in emergency situations." *Id.* at 688.  The court refused to speculate as to whether the statute could be applied in an unconstitutional manner, but noted that "an owner's ability to rent his premises may not be conditioned upon his consent to a warrantless inspection."  *Id.* (citation omitted).[11]

More recently, in *Palmieri v. Town of Babylon*, No. 01 CV 1399, 02 CV 6075, 2006 WL 1155162 (E.D.N.Y. Jan. 6, 2006), *aff'd*, 277 Fed. Appx. 72 (2008), the plaintiff challenged a rental permit law that required property owners to obtain a rental permit for any non-owner occupied rental unit, regardless of whether or not rent is paid.  *See id.* at *1.  The ordinance allowed the building inspector to inspect a premises when a landlord applies for a rental permit, but, if the landlord refused to consent to the inspection, the building inspector was required to apply to the district court for a search warrant "where there is reasonable cause to believe that a

---

[11] Notably, unlike the municipal ordinance at issue in *Sokolov*, the ordinance at issue in *Pashcow* did not subject a landlord to a fine or criminal prosecution if he refused to consent to a warrantless inspection.

violation" of the law has occurred.  *Id.* at *10 & n.8.  The plaintiff had never applied for or obtained a rental permit for his property and, therefore, defendant commenced criminal proceedings against him.  *See id.* at *1.

Rejecting the plaintiff's Fourth Amendment claim, which alleged that the ordinance was unconstitutional on its face and as applied to him, the court first held that a warrant obtained on "reasonable cause" is the equivalent of "probable cause" under the Fourth Amendment, and, therefore, the fact that the ordinance required a showing of "reasonable cause" did not violate the plaintiff's Fourth Amendment rights.  *See id.* at *10 (citations omitted).  Next, citing to *Pashcow*, the court rejected the plaintiff's Fourth Amendment facial challenge.  *See id.* (citation omitted). Finally, the court rejected the plaintiff's as applied challenge, in which he alleged that he was unconstitutionally seized by the defendant through its use of the rental permit law.  *See id.* at *10-*11.

Similarly, in *Arrowsmith v. City of Rochester*, 309 A.D.2d 1201 (4th Dep't 2003), the ordinance at issue required landlords to apply for renewal of certificates of occupancy for their residential rental properties every five years.  *See id.* at 1201.  First, the Fourth Department held that the ordinance is "'sufficiently precise to satisfy the requirements of due process.'" *Id.* (quotation omitted).  The court then noted that the ordinance does not authorize warrantless, nonconsensual inspections of the rental properties.  *See id.* (citations omitted).  Finally, the court held that "[t]he requirement that plaintiffs apply for renewal of certificates of occupancy every five years bears a reasonable relationship to defendant's legitimate goals of promoting public health and safety and maintaining property values . . . , and defendant's decision not to impose the same requirement on owner-occupied residential property has a rational basis[.]" *Id.* (internal citations omitted); *see also Brockport Sweden Property Owners Assoc. v. Village of Brockport*, 81

A.D.3d 1416 (4th Dep't 2011); *McLean v. City of Kingston*, 57 A.D.3d 1269 (3d Dep't 2008);

*Stender v. City of Albany*, 188 A.D.2d 986 (3d Dep't 1992).

Finally, in *Wisoff v. Schenectady*, the plaintiff filed suit in New York State Supreme Court alleging that Schenectady's Rental Certificate Ordinance violated his Fourth Amendment rights, as well as the parallel protections provided by Article I, Section 12 of the New York State Constitution. The case was removed to the Northern District of New York, but Judge Mordue remanded the New York State constitutional claim. *See Wisoff v. Schenectady*, No. 1:07-cv-34, Dkt. No. 25 at 2. The plaintiff contended that the Rental Certificate Ordinance contained the same constitutional infirmities as the ordinance in *Sokolov*, in that it requires a warrantless inspection and that Article I, Section 12 of the New York State Constitution affords greater protection than the Fourth Amendment with respect to administrative searches. *See id.* at 5. In a January 19, 2012 Decision and Order, the Supreme Court held that,

> contrary to the plaintiff's contention, the Court does not find that the Schenectady RCO authorizes and requires a warrantless inspection of residential rental property. Instead as noted by the defendant and as set forth in the district court opinion remanding the plaintiff's state law claim to this Court for determination, the Freeport legislation determined to be unconstitutional in Sokolov "contain[ed] no alternative for inspection pursuant to warrant, whereas Schenectady's ordinance expressly provides that where consent is refused, the inspection is undertaken pursuant to warrant." In such regard, the Schenectady ordinance/code provision at issue is similar to legislation upheld in the cases of Pashcow v. Town of Babylon, 53 N.Y.2d 687, 439 N.Y.S.2d 103 (1981) and Stender v. City of Albany, 188 A.D.2d 986, 592 N.Y.S.2d 70 (3d Dept., 1992).

19

*See id.* at 6.  As such, the Supreme Court found that the Rental Certificate Ordinance did not violate the plaintiff's rights under Article I, Section 12 of the New York State Constitution.  *See id.* at 9.[12]

As in *Pashcow* and *Palmieri*, if the owner of a rental unit refuses to allow Defendant Schenectady's code enforcement officers to conduct an inspection so that a rental certificate may be issued, the code enforcement officer must then apply to the City Court for a search warrant for that premises.  *See Palmieri*, 2006 WL 1155162, at *10-*11; *Pashcow*, 53 N.Y.2d at 688. Moreover, the Ordinance does not make it unlawful to refuse consent for a search of a rental unit; it simply makes it unlawful to rent an apartment without first obtaining a rental certificate. Refusing consent for a warrantless inspection of the rental unit simply requires the code enforcement officer to obtain a search warrant, which may cause additional delay in the process of obtaining a rental certificate.  Finally, to extent that Plaintiff is attempting to assert that the Ordinance violates his Fourth Amendment rights regarding apartments which are occupied by tenants, he does not have standing to bring such a challenge.  *See Mangino*, 739 F. Supp. 2d at 234 (citing cases).

Based on the foregoing, the Court grants Defendants' motion for summary judgment as it relates to the inspection of 1151 Crane Street.

---

[12] The Court notes that the right to be free from unreasonable searches and seizures under the Fourth Amendment and Article I, Section 12 of the New York State Constitution are largely coextensive.  *See Febres v. City of New York*, 238 F.R.D. 377, 392 (S.D.N.Y. 2006) (citations omitted).  The New York State Court of Appeals "has repeatedly stated that the proscription against unlawful searches and seizures contained in N.Y. Constitution, article I, § 12 conforms with that found in the 4th Amendment, and that this identity of language supports a policy of uniformity between State and Federal courts."  *People v. Johnson*, 66 N.Y.2d 398, 406 (1985). Consequently, if the Court finds that Plaintiff's Fourth Amendment rights have not been violated, it will also conclude that Plaintiff's parallel rights under the New York State Constitution have not been violated.  *See Febres*, 238 F.R.D. at 392.

### *2. Defendants' inspection of 727 Crane Street*

To the extent that Plaintiff is asserting that Defendants violated his Fourth Amendment

rights on October 1, 2009, when Defendants Viscariello and Wickham entered his shop located at

727 Crane Street without a warrant or his consent, this claim must fail as well.  As Plaintiff

admitted during his deposition, he had leased part of the first floor of 727 Crane Street to a Mr.

Mohammed Alneil during this time.  *See* Dkt. No. 52-24 at 32.  On October 1, 2009, when

Defendants Wickham and Viscariello arrived, the door to the store was open and an employee of

Mr. Alneil, who was present at 727 Crane Street, called Plaintiff to inform him that Defendant

Viscariello and Wickham were at the property.  *See id.* at 40-42; Dkt. No. 52-25 at 9, 13.[13]

Defendants Viscariello and Wickham then waited for Plaintiff, who arrived shortly thereafter.

*See* Dkt. No. 52-25 at 13-14.

"It is well-settled in this circuit that 'third party consent to a search will validate the search

if two prongs are present: first, the third party had access to the area searched, and, second, either:

(a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to

gain access.'"  *Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 53 (2d Cir. 2003) (quotation

omitted).  Plaintiff's testimony clearly established that Mr. Alneil and his employees had access to

the area in question and that they had both common authority over the area and permission to gain

access to it.  Although Plaintiff contends that Mr. Alneil was not present at 727 Crane Street on

the day in question, he does not dispute that Defendants "Wickham and Viscariello were let into

---

[13] Defendant Wickham claims that it was Mr. Alneil who was at 727 Crane Street on
October 1, 2009, not one of his employees.  *See* Dkt. No. 52-25 at 9.  This distinction, however,
does not create an issue of fact precluding summary judgment because of the presence of Mr.
Alneil's employees at the property.

the building by a representative of a tenant in possession of the property." *See* Dkt. No. 52-3 at ¶ 8; Dkt. No. 61 at ¶ 8.

Based on the foregoing, the Court finds that Defendants are entitled to summary judgment as to Plaintiff's Fourth Amendment claim.

**E.      First amendment retaliation**

Plaintiff contends that Defendants' actions in enforcing the Building Code were in retaliation for filing and winning tax grievances in July of 2009. *See* Dkt. No. 55-11 at 13. Further, Plaintiff claims that, three days after he spoke against property rezoning and complained of selective enforcement in a May 30, 2006 letter to the mayor, a code enforcement officer entered his home under the pretext of searching for tenants in his basement. *See id.* Further, Plaintiff claims that, sometime in 2007, Defendant Van Norden and code enforcement officer Michael Marsche sent him several letters stating that he needed to obtain building permits to be in compliance with Section 138-11 of the Code and that he needed to obtain electrical and plumbing permits. *See id.* at 14. Plaintiff contends, however, that no such permits are required for the non-structural repairs that he was performing. *See id.*

"[T]he Second Circuit has 'described the elements of a First Amendment retaliation claim in several ways, depending on the factual context.'" *Sloup v. Loeffler*, No. 05-CV-1766, 2008 WL 3978208, *22 (E.D.N.Y. Aug. 21, 2008) (quoting *Williams v. Town of Greenburgh*, [535 F.3d 71, 76 (2d Cir. 2008)]). Where a private citizen asserts a First Amendment claim against a public official, the plaintiff must demonstrate that (1) the plaintiff engaged in speech or conduct that the First Amendment protects; (2) the plaintiff's exercise of his First Amendment rights motivated the defendant's actions; and (3) the defendant's actions effectively chilled the plaintiff's exercise of

those rights.  *See Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)); *Moran v. City of New Rochelle*, 346 F. Supp. 2d 507, 517 (S.D.N.Y. 2004) (citation omitted).

In cases "involving criticism of public officials by private citizens," the Second Circuit has generally "impose[d] an actual chill requirement for First Amendment retaliation claims[,]" *i.e.*, a requirement that the plaintiff allege and ultimately prove an "actual chill" of his First Amendment rights.  *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citing *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)); *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (holding that the "plaintiff must show, with respect to the third element, that his First Amendment rights were 'actually chilled'").  To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment.  *See, e.g., Greenwich Citizens Comm., Inc. v. Counties of Warren & Washington Indus. Dev. Agency*, 77 F.3d 26, 31 (2d Cir. 1996) (holding that, to establish a First Amendment retaliation claim, the plaintiffs must show that the defendants acted "with the purpose of deterring the exercise of First Amendment freedoms"); *Wolff v. Town of Mount Pleasant*, No. 06 Civ. 3864, 2009 WL 1468691, *6 (S.D.N.Y. Apr. 27, 2009) (holding that, "[i]n order to maintain a First Amendment retaliation claim, a private citizen complainant must allege that the defendant took some action in response to his or her First Amendment activity that 'effectively chilled the exercise of his First Amendment right'" (quoting *Williams*, 535 F.3d at 76)); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (holding that "Spear's naked assertion of a chill does not suffice to defeat a Rule 12(b)(6) motion"); *see also Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (affirming summary judgment for the defendant on the plaintiff's First Amendment

claim and indicating that the plaintiff had failed to even state a valid claim because she had

"alleged no actual affect on the exercise of her First Amendment rights at all").

However, "where the retaliation is alleged to have caused an injury separate from any

chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary

to state a claim." *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009) (citing

*Morrison v. Johnson*, 429 F.3d 48, 51 (2d Cir. 2005)) (other citation omitted).  As the Second

Circuit has noted,

> defendants are correct that a plaintiff asserting First Amendment
> retaliation must allege some sort of harm, but they are wrong that
> this harm must, in all cases, be a chilling of speech.  In the
> employment context, under this framework, the harm is some
> concrete diminution in job responsibilities, security, or pay – up to
> and including termination.  In the prison context, the harm could
> include such an adverse action as placing a plaintiff in keeplock for
> a period of weeks.  Indeed, even in certain cases involving public
> official/private citizen retaliation claims, we have seemingly not
> imposed a subjective chill requirement where some other harm is
> asserted.  For example, in *Gagliardi v. Village of Pawling*, 18 F.3d
> 188 (2d Cir. 1994), we confronted the plaintiffs' claim that the
> municipal defendants' alleged misapplication of the zoning code
> was conducted in retaliation for the plaintiffs' exercise of their free
> speech rights.  To establish a retaliation claim under 42 U.S.C.
> § 1983 under those circumstances, we held that the plaintiffs must
> initially show (1) "that [their] conduct was protected by the first
> amendment," and (2) that "defendants' conduct was motivated by or
> substantially caused by [plaintiffs'] exercise of free speech." *Id.* at
> 194 (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 217 (2d
> Cir. 1988)), and nothing beyond the two requirements.  Still, the
> *Gagliardi* plaintiffs' retaliation claim apparently survived a motion
> to dismiss because (1) they made an adequate showing on both of
> these accounts, but also because (2) they adequately pleaded
> non-speech injuries – among other things, noise pollution. *Id.* at
> 190. *See also Dougherty v. Town of N. Hempstead Bd. of Zoning
> Appeals*, 282 F.3d 83 (2d Cir. 2002) (applying same test in similar
> context).

*Gill*, 389 F.3d at 383.

24

In the present matter, Plaintiff has adequately demonstrated, and Defendants appear to concede, that he engaged in conduct protected by the First Amendment.  Plaintiff alleged that he successfully challenged Defendant Schenectady's tax assessment for several of his properties in 2009 and that he repeatedly complained to the City's officials about the selective enforcement of its ordinances.  Further, Plaintiff sent Defendant Stratton a letter of complaint on February 24, 2010.  *See* Dkt. No. 52-2 at 12-13 (citations omitted).  Such conduct is clearly protected by the First Amendment.  *See Dougherty*, 282 F.3d at 91 (holding that "[t]he rights to complain to public officials and to seek administrative and judicial relief from their actions are protected by the First Amendment" (collecting cases)); *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (same).

Regarding the second element, the Court finds, as it did in its August 30, 2011 Memorandum-Decision and Order, that Plaintiff has failed to demonstrate that Defendants' conduct was motivated by Plaintiff's exercise of his First Amendment rights.  First, Plaintiff inexplicably alleges that the requirement that he obtain building, electrical and plumbing permits is evidence of a causal connection to his complaints.  Plaintiff, however, fails to demonstrate how Defendants' decision to enforce these building permit provisions against him is in any way connected to any of the protected activity at issue in this case.  Plaintiff's complaints were neither about nor sent to the inspectors who enforced these provisions against him and nothing indicates that these inspectors had any knowledge of Plaintiff's complaints.

Further, Plaintiff attempts to establish a causal connection based on the temporal proximity of the tax grievance he won in July of 2009 and the appearance tickets issued on October 1, 2009 for violations at 727 Crane Street.  *See* Dkt. No. 55-11 at 15.  It is well settled that proof of causation may be shown indirectly by, among other things, demonstrating that the

25

protected activity was followed closely by a retaliatory action. *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (holding that "[t]he causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action'" (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)) (other citation omitted); *see also Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Further, the cases demonstrate that the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001). The relevance of temporal proximity in a particular First Amendment retaliation case turns on its unique facts and circumstances. *See Smith v. Da Ros*, No. 09 Civ. 458(MRK), 2011 WL 839374, *13 (D. Conn. Feb. 25, 2011) (citing *Burkybile v. Bd. of Educ. of Hastings–On–Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005)).

In the present matter, the Court finds that the alleged temporal proximity of the protected speech (July of 2009) and the alleged retaliation (October 1, 2009) are insufficient to show that Defendants' conduct was motivated by Plaintiff's speech. Although a period of more than two months may be sufficient in certain circumstances, *see Ashok v. Barnhart*, 289 F. Supp. 2d 305, 315 (E.D.N.Y. 2003), Plaintiff provides no other factual support indicating that his speech motivated Defendants' alleged retaliatory conduct. *Cf. Frisenda v. Incorporated Village of Malverne*, 775 F. Supp. 2d 486, 512 (E.D.N.Y. 2011) (holding that "courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation" (citing cases)). Finally, Defendants deny that they had any knowledge of Plaintiff's successful tax grievances and nothing

in the record supports Plaintiff's claim to the contrary. *See Harlen Assoc. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (holding that, "[a]lthough all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of the motion" (citations omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding that the nonmoving party must do more than merely show "some metaphysical doubt" as to the material facts to escape summary judgment).

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's First Amendment retaliation claim.

**F.      Equal protection claim**

The Equal Protection Clause requires the government to treat all similarly situated people alike. *See Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)).  A plaintiff may proceed under the Equal Protection Clause as either a "class of one," *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*) (citations omitted), or under the theory of "selective enforcement," *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citation omitted).[14]

*1. Selective Enforcement*

Plaintiff claims that Defendants are selectively enforcing the Code against newcomers to the City and that his complaints regarding this have resulted in retaliatory conduct against him.

---

[14] As the Court noted in its Memorandum-Decision and Order denying Plaintiff's motion for a preliminary injunction, in light of Plaintiff's *pro se* status, the Court has treated Plaintiff's complaint as alleging both a class of one and a selective enforcement claim.

*See* Dkt. No. 1 at ¶ 26.  As a newcomer, Plaintiff alleges that he was issued violations on October

1, 2009, February 19, 2010 and April 27, 2010 for renting apartments with rental certificates.  *See*

*id.* at ¶¶ 10, 21, 25.  Plaintiff claims that the requirement for rental certificates and building

permits were not required for the prior owners.  *See* Dkt. No. 52-24 at 14, 17.

      The Second Circuit has "described selective enforcement as a 'murky corner of equal

protection law in which there are surprisingly few cases.'"  *Diesel*, 232 F.3d at 103 (quoting

*LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980)).  Nevertheless, it is well settled that a

plaintiff must meet a two-pronged test in order to successfully demonstrate selective enforcement

under the Fourteenth Amendment.  *See Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790

(2d Cir. 2007) (quotation omitted).  "[T]o succeed on a 'selective enforcement claim,' a plaintiff

must show: '(1) that they were treated differently from other similarly situated individuals, and (2)

that such differential treatment was based on impermissible considerations such as race, religion,

intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to

injure a person.'"  *Sebold v. City of Middletown*, No. 3:05-CV-1205, 2007 WL 2782527, *26 (D.

Conn. Sept. 21, 2007) (quotation omitted); *see also Cine SK8*, 507 F.3d at 790 (quotation

omitted); *Church of the Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir.

2004) (holding that "[a] selective enforcement claim requires, as a threshold matter, a showing

that the plaintiff was treated differently compared to others similarly situated").

      In particular, a "plaintiff must present evidence comparing [him]self to individuals that are

'similarly situated in all material respects.'"  *Sebold v. City of Middletown*, No. 3:05-CV-1205,

2007 WL 2782527, *26 (D. Conn. Sept. 21, 2007) (quoting *Graham v. Long Island R.R.*, 230

F.3d 34, 39 (2d Cir. 2000)).  Further, the Second Circuit has held that, to the extent a municipality

is selectively enforcing land use restrictions, a plaintiff would be "hard-pressed" to demonstrate

selective treatment without also demonstrating the municipality's knowledge of the other, unenforced violations.  *See LaTrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (citations omitted).  However, the Second Circuit also stated that

> [w]e do not hold that knowledge will be required in every case.  It is conceivable that selective treatment could be shown where, for example, proof was offered that a municipality did not know of prior violations because it adhered to a see-no-evil policy of not enforcing an ordinance, and then abandoned that policy with respect to a violator engaged in protected activity.

*Id.* at 70 n.1.

In the present matter, although the theory of equal protection on which Plaintiff relies is unclear, many of the facts he cites are essentially the same as those underlying his First Amendment retaliation claim.  Therefore, to the extent that Plaintiff's equal protection claim is grounded on his contention that he was treated differently because he had exercised his First Amendment rights, the two claims coalesce.  *See African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 363 (2d Cir. 2002) (holding that the plaintiffs' First Amendment and equal protection claims coalesced because the alleged deprivation of equal protection was "punish[ment]" for plaintiffs' exercise of their First Amendment rights); *Gentile v. Nulty*, 769 F. Supp. 2d 573, 582-83 (S.D.N.Y. 2011) (holding that claims coalesced because the plaintiff alleged his unequal treatment was retaliation for his prior lawsuits against the same municipal defendant) (quotation and other citation omitted).  "'Where this is the case, the equal protection claim is dependent on the First Amendment claim; in other words where the First Amendment claim has failed, the equal protection claim fails, too.'"  *Gentile*, 769 F. Supp. 2d at 582-83 (quoting *Kempkes v. Downey*, No. 07 Civ. 1298(KMK), 2008 WL 852765, *6 (S.D.N.Y. Mar. 31, 2008) (other citations omitted); *see also Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004) (quotation omitted).  Since Plaintiff's First Amendment claim has been dismissed, so too must

Plaintiff's equal protection claim insofar as this claim asserts that he was treated differently because he exercised his First Amendment rights.[15]

In addition to alleging that he was treated differently because of his First Amendment activity, Plaintiff also points to several specific instances where similar building code violations went unpunished with respect to property owned by others similarly situated.  Specifically, for the first time, Plaintiff alleges that, with respect to properties he purchased, code violations were not enforced against the previous owners, who were primarily Caucasian, but were enforced against him, who is a "Muslim and a newcomer from Egypt."  *See* Dkt. No. 55-11 at 18.  For example, Plaintiff alleges that Mr. Marsche, who is not a Defendant in this action, charged him with several plumbing violations when he inspected the basement at Plaintiff's 26 Selden Street property.  *See id.* at 19.  Plaintiff claims that Mr. Marsche knew that he could not have installed the fixtures that were in violation because "the toilet is of a type banned by Federal laws since 1992, and the shower [was] in such bad shape and could not have been installed during the brief period I owned the house."  *See id.* (citation omitted).  Plaintiff, however, does not allege or show in any way that Mr. Marsche or any of the Defendants knew about the violations prior to this inspection, before Plaintiff purchased the home.  Further, it is irrelevant whether Plaintiff caused the violation; he owned the property and was required to correct all code violations.

Plaintiff also alleges that, with respect to his 1594 and 1596 Union Street properties, that the previous owner only obtained one rental certificate during the time that she owned the

---

[15] The Court notes that Plaintiff filed his complaint on May 10, 2010.  However, many of Plaintiff's allegations in this section occurred prior to May 10, 2007, which are beyond the three-year statute of limitations applicable to section 1983 actions in New York.  *See Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury*, 445 F.3d 136, 151 (2d Cir. 2006) (applying New York's three-year statute of limitations applicable to personal injury actions in considering the timeliness of claims under section 1983) (citation omitted).

properties and seems to indicate that the previous owner was not cited for rental certificate violations.  *See id.*  Plaintiff claims that, after attending a landlord training session sponsored by the City, Defendant Lamp informed him that he needed to have two rental certificates for the two family property if he does not live in one of the units.  *See id.*  Plaintiff apparently obtained these rental certificates, without issue, and without being issued any violations by the City.  *See id.* at 19-20; Dkt. No. 55-2 at 14.  Plaintiff claims that the previous owner was not forced to obtain rental certificates for the properties because the City adhered to a "see-no-evil policy."  *See id.* at 20.  Plaintiff, however, does not actually allege that the Rental Certificate Ordinance was enforced against him here, just that he learned that, in order to comply with it, he must obtain two rental certificates.  Further, Plaintiff does not allege that the previous owner inquired about the need for rental certificates for her property and was informed that she either did not need to comply with the law or that a lesser burden would be placed on her to be considered in compliance with the law.

Further, Plaintiff claims that, with respect to his property at 727 Crane Street,  he was treated differently than the previous owner, who was not required to obtain a rental certificate and who was not issued appearance tickets regarding unsafe conditions and a stop work order.  *See id.* at 20-21.  Plaintiff, however, fails to establish that he was similarly situated to this individual, other than the fact that she previously owned the building.  For example, Plaintiff was cited for the unsafe condition of "open wires" and was issued a stop-work order.  Plaintiff does not allege that such wires were exposed while the previous owner owned the building or that she performed work in the building without first obtaining a building permit.  *See id.*  As such, Plaintiff fails to show that he was similarly situated to the previous owner or that Defendants had knowledge of such violations when she owned the building.

With respect to the 1151-59 Crane Street property, Plaintiff claims that the former owner filed a tax grievance on June 28, 2000, but was not issued any appearance tickets for working without a building permit. *See id.* at 21. Yet when he filed tax grievances in 2009 and 2010, he was issued appearance tickets for working without a building permit. *See id.* Although Plaintiff and the former owner both filed tax grievances, nothing in the record indicates that the former owner made improvements to the property without first obtaining a building permit. In fact, Plaintiff attached as an exhibit two building permit applications submitted by the previous owner of 1151-59 Crane Street property, showing that she did, in fact, apply for building permits, which were approved, when she performed work on the buildings. *See* Dkt. No. 55-4 at 17-18. Finally, although Plaintiff was issued a building permit for work done at 1151 Crane Street on January 25, 2010, which was inspected on April 20, 2010, the appearance ticket he was issued on August 30, 2010 does not indicate that it was for the work performed pursuant to the January 25, 2010 building permit and there is no indication which Defendants, if any, issued the appearance ticket. *See* Dkt. No. 55-10 at 2.

Plaintiff also claims that, through discovery, he learned that, in 2009 and 2010, Defendant Viscariello only issued court appearance tickets to four other property owners for violations of sections 138-30 and 138-11 of the City Code. *See* Dkt. No. 55-11 at 22. Plaintiff seems to be implying by issuing so few appearance tickets for these violations, Defendant Viscariello selectively enforced these provisions against him. This argument, however, is unpersuasive, especially in light of the fact that Plaintiff only provided the number of "appearance tickets" issued, and not all notices of violation issued.[16]

---

[16] A notice of violation informs an owner of a building code violation and provides the owner with a certain period of time to remedy any such violations. An appearance ticket is issued

(continued...)

Moreover, Plaintiff's claims that he was issued a code violation for the front step of his 1151 Crane Street property, yet the previous owner was not, nor were five other property owners in the area for similar violations. *See id.* at 22. Plaintiff, however, fails to allege or establish that Defendants were aware of these other violations or that these alleged other violations involved buildings that are subject to the same restrictions. *See LaTrieste Restaurant*, 188 F.3d at 69-70 (citations omitted).

Finally, with respect to many of his properties, Plaintiff alleges that Defendants issued appearance tickets and notices of violation only after he filed tax grievances. As discussed, however, Plaintiff fails to allege or show that Defendants had any knowledge of his tax grievances. Moreover, to the extent that Plaintiff is alleging that his taxes were increased because of some improper consideration, he has failed to put forth any other similarly situated individuals whose property taxes were not increased (during the same time period) and, significantly, he has failed to list as a Defendant any person actually personally involved in the property tax assessments.

Based on the undisputed facts of this case, the Court concludes that no rational jury could find that Plaintiff has satisfied his burden on his selective enforcement claim. Plaintiff has relied largely on his own conclusory assertions that Defendants have treated him differently than other similarly situated individuals, which is insufficient to defeat Defendants' motion. Plaintiff repeatedly failed to comply with the relevant building code provisions, was cited for his violations, and failed to demonstrate that others similarly situated were treated more leniently. *See Mangino v. Incorporated Village of Patchogue*, 739 F. Supp. 2d 205, 254 (E.D.N.Y. 2010)

---

[16](...continued)
when the owner fails to bring his premises into compliance with the building code. *See* Dkt. No. 55-4 at 21-23.

(holding that "[t]o make it past the summary judgment stage on a selective enforcement equal protection claim, it is plaintiffs' burden to demonstrate similarly situated individuals who were treated differently.  Here, plaintiffs' burden is to demonstrate that other residents who were issued tickets for, *e.g.*, lack of a rental permit, continued to not comply with the law at issue, *e.g.*, the rental permit law, but did not receive subsequent summonses for their continued non-compliance").

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's selective enforcement equal protection claim.

### 2. Class of one

To prevail on a "class of one" equal protection theory, a plaintiff must show that the defendant "intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds*, *Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)).[17]  The plaintiff's burden on a "class of one" claim is "extremely high," and a plaintiff cannot prevail absent a *prima facie* showing that he is "identical in all relevant respects" to the

---

[17] The Court notes that *Neilson* involved the application of the class-of-one equal protection theory in the public employment context.  Subsequent to the decision in *Neilson*, however, the Supreme Court explicitly held that "the class-of-one theory of equal protection does not apply in the public employment context."  *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 595 (2008).  Thus, the Second Circuit "overrule[d] [*Neilson*] . . . to the extent that it conflicts with the holding of *Engquist*."  *Appel v. Spiridon*, 531 F.3d 138, 139-40 (2d Cir. 2008).  Nevertheless, the Second Circuit's discussion in *Neilson* regarding the level of similarity necessary to support a class-of-one equal protection claim has not been overruled.  *See Smith v. Fischer*, No. 9:07-CV-1264, 2009 WL 632890, *10 n.30 (N.D.N.Y. Feb. 02, 2009) (quotation and other citations omitted).

individuals with whom he compares himself. *Id.* (citation omitted). Specifically, the plaintiff

must establish that

> "(i) no rational person could regard the circumstances of the
> plaintiff to differ from those of a comparator to a degree that would
> justify the differential treatment on the basis of a legitimate
> government policy; and (ii) the similarity in circumstances and
> difference in treatment are sufficient to exclude the possibility that
> the defendants acted on the basis of a mistake."

*Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quotation and

footnote omitted); *see also Ruston v. The Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 60

(2d Cir. 2010).[18]

The Supreme Court's decision in *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008),

eliminated class-of-one claims for government employees. In *Analytical Diagnostic Labs, Inc.*,

the Second Circuit discussed whether *Engquist* is limited to the public employment context or

whether it should extend to other types of discretionary government behavior. *See Analytical*

*Diagnostic Labs, Inc.*, 626 F.3d at 141-42. Joining the Seventh Circuit, the Second Circuit held

that "not all discretionary activity is 'off-limits from class-of-one claims.'" *Id.* at 142 (quotation

omitted). Quoting *Engquist*, the court held that there was a "'crucial difference, with respect to

constitutional analysis, between the government exercising the power to regulate or license, as

lawmaker, and the government acting as proprietor, to manage its internal operations.'" *Id.*

---

[18] Although the Supreme Court used the words "similarly situated" to describe the standard
for a "class of one" claim, it is not the same standard of "similarity" as used in a protected-class
discrimination claim. *Neilson*, 409 F.3d at 104-05. The difference comes from the purpose of the
showing. *See id.* In a claim of discrimination based on group status, the treatment of persons in
similar circumstances is offered to "provide, along with other evidence, an evidentiary inference
of the use of particular impermissible factors," whereas in a "class of one" claim, "the existence of
persons in similar circumstances who received more favorable treatment than the plaintiff is
offered to provide an inference that the plaintiff was intentionally singled out for reasons that so
lack any reasonable nexus with a legitimate governmental policy that an improper purpose –
whether personal or otherwise – is all but certain." *Id.* (citation omitted).

(quoting *Engquist*, 553 U.S. at 598, 128 S. Ct. 2146).  Moreover, the court noted that the

"'government has significantly greater leeway in its dealings with citizen employees than it does

when it brings its sovereign power to bear on citizens at large.'"  *Id.* (quotation omitted).  As such,

the court held that, because the department of health did "not possess unfettered discretion in

deciding whether to revoke, suspend or otherwise limit an existing license[,]" the plaintiffs had a

way to distinguish themselves from other labs whom the department of health allegedly subjected

to less scrutiny.  *Id.* (citation omitted); *see also Hanes v. Zurick*, 578 F.3d 491, 496 (7th Cir.

2009) (noting that "the officer who repeatedly arrests someone solely because of malice does

have a way to distinguish between the citizen repeatedly arrested and the citizen left alone: the

officer hates the arrestee").

     As an initial matter, Plaintiff's class of one claim fails because, as with his selective

enforcement claim, Plaintiff cannot show that he was treated differently than similarly situated

individuals.  As discussed above, Plaintiff has failed to establish that the alleged comparators

were "identical in all relevant respects."  Although Plaintiff alleges that these other comparators

were not issued notices of violations for their alleged building code violations, he submits no

competent summary judgment evidence to support his assertions.  *See Ramsey v. Henderson*, 286

F.3d 264, 269 (5th Cir. 2002) (holding that "conclusory allegations, speculation, and

unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for

summary judgment" (quotation omitted)).

     In *Lerch v. City of Green Bay*, 218 Fed. Appx. 502 (7th Cir. 2007), the plaintiff brought a

class-of-one claim and argued that he established that similarly situated owners were treated

differently because he was cited for having an unpaved driveway apron, while other nearby

properties seemingly avoid citation, since their driveway aprons continued to be unpaved.  *See*

*id.* at 504.  The Seventh Circuit disagreed, and held that the plaintiff failed to "meet his 'very significant burden' of introducing evidence that the other individuals are similarly situated in all relevant respects."  *Id.* (quotation omitted).  Specifically, the court found that the plaintiff "offered no proof, for instance, that the owners of those properties owned many rental properties containing multiple code violations, that their tenants had complained to the city, or that the other owners were not cited, much less that the same inspector made the decision in each case."  *Id.* (citation omitted).

As in *Lerch*, the Court finds that Plaintiff has failed to meet his "'very significant burden'" of introducing evidence that the alleged comparators are similarly situated in all relevant respects. No reasonable jury could find, based on the evidence presented, that a similarly situated comparator with similar code violations was not subjected to inspections or notices of violation, *i.e.*, treated more favorably.  There simply is not enough competent information in the record from which a reasonable juror could determine that any of the alleged comparators are comparable to Plaintiff in all material respects.  As such, the Court grants Defendants' motion for summary judgment as to Plaintiff's class-of-one equal protection claim.

## G.     State-law claims

In his complaint, in addition to his federal causes of action, Plaintiff asserts several state-law causes of action.  District courts have supplemental jurisdiction over all state-law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution.  *See* 28 U.S.C. § 1367(a). Application of supplemental jurisdiction is discretionary, however, and "it requires a balancing of the considerations of comity, fairness to the litigants, judicial economy, and the avoidance of

needless decisions of state law." *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir. 1979) (citation omitted).

Since the Court has granted Defendants' motion for summary judgment as to all of Plaintiff's federal causes of action, and taking into consideration the factors listed above, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law causes of action.

# IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 19, 2012
      Albany, New York

Mae A. D'Agostino
U.S. District Judge